# In the United States District Court
## For the Eastern District of Michigan
## Southern Division

| | | |
|---|---|---|
| **CFI Group USA LLC,**<br>　　Plaintiff<br><br>v.<br><br>**Verint Americas Inc.,**<br>　　Defendant<br><br><br>**American Customer Satisfaction Index LLC,**<br>　　Plaintiff<br><br>v.<br><br>**ForeSee Results Inc.,**<br>　　Defendant | § § § § § § § § § § § § § § § § § § | Case Number: 2:19-cv-12602<br><br>Judge: Gershwin A. Drain<br><br>Magistrate: Anthony P. Patti<br><br><br><br>Case Number: 2:18-cv-13319<br><br>Judge: Gershwin A. Drain<br><br>Magistrate: Anthony P. Patti |

### Reply Brief in Support of
### Motion to Exclude Testimony of Expert Matthew G. Ezell

Plaintiffs American Customer Satisfaction Index LLC and CFI Group USA LLC ("ACSI / CFI") file this Reply to the Response of Defendants ForeSee Results Inc. and Verint Americas Inc. ("ForeSee / Verint") to the Motion to Exclude Testimony of Expert Matthew G. Ezell.

### I. Argument and Authority

In the Motions to exclude the testimony of Mr. Ezell, ACSI / CFI challenged Mr. Ezell's opinion because (1) he surveyed the wrong universe of respondents, (2) he provided no metric for quantifying the results of his survey, and (3) his survey is irrelevant to any pending issue. As proponent of Mr. Ezell's testimony, it is ForeSee / Verint's burden to show, by a preponderance of proof, that Mr. Ezell's opinions are admissible. *See Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Because ForeSee / Verint has failed to meet that burden, the Court should exclude Mr. Ezell's testimony.

**A. ForeSee / Verint still have not justified the purposeful inclusion of an irrelevant survey universe.**

As ACSI / CFI noted in their Briefs, Mr. Ezell's survey purposefully included respondents who were <u>unlikely</u> to be consumers of services like those offered by ForeSee or CFI. *See* PageID.1943-46.[1] ForeSee / Verint responded that "Plaintiffs argue that the universe should have been limited to respondents who have already contracted with a company like ForeSee or CFI to provide customer satisfaction services." Response p. 7. (emphasis added). First of all, the cited passages do not

---

[1] The parties filed identical motions and responses in Case No. 2:18cv13319 and Case No. 2:19cv12602, however ForeSee / Verint's Response was filed under seal. References to the Response in this Reply will refer to page numbers and all other references will use the PageIDs associated with Case No. 2:19cv12602.

Reply Brief in Support of Motion to Exclude Testimony of Expert Matthew G. Ezell  
ClarkHill\98574\385857\263371593.v3-7/9/21

1

support ForeSee / Verint's characterization of ACSI / CFI's argument, and moreover ForeSee / Verint's characterization is refuted later a few pages in ACSI / CFI's brief. *See* PageID.1947 (describing proper universe as "purchasers or potential purchasers of the services of either ForeSee or CFI LLC"). ACSI / CFI do, however, agree that the proper universe should have included potential customers of ForeSee. But as ACSI / CFI has already explained, *see* PageID.1943-47, although Mr. Ezell claimed to know ForeSee's business, he purposefully chose a universe that included respondents who were unlikely to purchase services from either ForeSee or CFI LLC. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,* 502 F.3d 504, 518 (6th Cir. 2007) (survey should limit respondent population to those persons likely to purchase defendant's products). ForeSee / Verint argue that "Potential customers include companies that currently collect and analyze customer satisfaction data in-house. ForeSee routinely markets to these companies and converts many into ForeSee customers." Response p. 7. Not only does ForeSee / Verint fail to offer any actual evidence to support this argument, but this rationalization facially falls short of the likely to purchase requirement.

Further, ForeSee / Verint argues that they have "many customers that spend far less than $20,000." Response pp. 7-8. ForeSee / Verint is either grossly ignorant of their customers, order histories, and price structures, or else they purposefully intend to deceive the Court. In support, ForeSee / Verint point to a set of orders

identified by ACSI / CFI's expert, David Haas, to show ForeSee / Verint's revenues, and in fact some of these orders are for amounts less than $20,000. However, every one of these orders came from a single, very large customer, namely the government of the United States of America, and during the periods considered by Mr. Haas, this one very large customer spent over $45M. ForeSee / Verint also point to three products listed in the ForeSee / Verint GSA Schedule. Again, only one very large customer buys ForeSee services using the GSA Schedule, and moreover, in context it appears that the three identified products are add-on tools which have no use except when purchased along with one of the CS Site Manager platforms. Finally, ForeSee / Verint claim that the Federal Consulting Group (FCG) is the main customer of ForeSee in the government and only has nine employees. But the FCG is part of the Department of the Interior which is part of that same one very large customer, which according to the Congressional Research Service, has a total employment of over four million people. *See* Federal Workforce Statistics Sources: OPM and OMB p. 6, Congressional Research Service (June 24, 2021). And irrespective of the number of employees at FCG, it is not in fact a customer that purchases services from ForeSee; rather, according to its website, FCG "collaborates with government organizations to effectively track the metrics and develop strategies to measure customer and employee satisfaction, communications initiatives, performance improvement strategies and internal strategic planning results."

https://www.fcg.gov/Performance-Measurement-Satisfaction (visited 7/8/2021).

### B. ForeSee / Verint still have not provided a metric for evaluating name recognition.

ForeSee / Verint's Response attempts to deflect Mr. Ezell's utter failure to provide any guidance for interpreting the results of his name recognition survey by associating his survey with other types of surveys. First, ForeSee / Verint asserts that Mr. Ezell's survey "complies with the factors for reliability identified in the Manual for Complex Litigation." Response p. 12. But the cited support for this statement actually comes from a chapter titled "Surveys in Dilution Cases," which, as the name suggests, discusses "fame surveys" under the Trademark Dilution Revision Act (TDRA). Brief Ex. L p. 155. Trademark dilution is a distinct cause of action, *see* 15 U.S.C. § 1125(c), which has not been raised in either of the present lawsuits. Further, as Judge Lawson has noted, "[o]ne of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 748 (E.D. Mich. 2014) (quoting *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.,* 550 F.Supp.2d 657, 674 (W.D.Tex. 2008). Because the bar for assessing mark "fame" is substantially higher than required for assessing mark "strength," ForeSee / Verint's reference is inapposite.

Next, ForeSee / Verint attempts to draw on the relationship between name

recognition and secondary meaning. Response p. 12-14. While the two may be conceptually related, they have different uses in the scope of trademark infringement. Name recognition is an element of <u>one</u> of the <u>eight</u> Frisch factors (strength of the mark) that are considered in assessing the likelihood of confusion between similar marks. *See Frisch's Restaurants Inc. v. Elby's Big Boy of Steubenville Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). Here, the issue is not over the likelihood of similar marks – the marks are identical – but rather whether ForeSee / Verint used marketing language that implied, *inter alia,* that the ForeSee services had certain characteristics and were approved by ACSI LLC. In contrast, secondary meaning is an attribute that allows registration of a mark that is "merely descriptive" by showing that the mark has become distinctive of the goods or services. 15 U.S.C. § 1052; *Park 'N Fly Inc. v. Dollar Park & Fly Inc.*, 469 U.S. 189, 194 (1985). Secondary meaning is irrelevant here because the ACSI mark has become incontestable under 15 U.S.C. § 1065. *Id*. at 196 ("The language of the Lanham Act also refutes any conclusion that an incontestable mark may be challenged as merely descriptive."). As such, any survey metrics for determining secondary meaning are not applicable for determining the percentage of recognizability needed to categorize the ACSI marks as weak or strong under *Frisch*.

### C. <u>ForeSee / Verint still has not adequately explained the relevance of Mr. Ezell's survey.</u>

As the Supreme Court has noted, "a judge assessing a proffer of expert

scientific testimony under Rule 702 should also be mindful of other applicable rules." *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 595 (1993). In particular:

> Finally, Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Judge Weinstein has explained: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Weinstein, 138 F.R.D., at 632.

*Id*. ForeSee / Verint argue that Mr. Ezell's survey goes towards the strength of the term "ACSI," Response p. 15-17, and that Mr. Ezell's survey goes towards the reasonable royalty rate, *Id*. p. 17. Yet, neither Mr. Ezell's opening report nor his reply report characterize his survey as related either to the strength of the ACSI mark or the reasonable royalty rate. As such, ForeSee / Verint's attempt to rehabilitate Mr. Ezell's opinions as relevant fall short of what is required under FED. R. EVID. 403. An opinion that was never intended to serve as evidence of the strength of the ACSI mark or indicative of a reasonable royalty rate is of limited probative value and, if considered by the trier-of-fact, has the potential to be "both powerful and quite misleading."

## II. Request for Relief

Based on the foregoing, as well as the arguments and authorities set forth in their Motions, ACSI / CFI therefore respectfully ask this Court to exclude Mr. Ezell

from testifying as an expert and to grant ACSI / CFI such other relief as this Court may deem appropriate.

          Respectfully submitted,

          /s/ William D. Cramer
          Karl J. Edward Fornell (MI P76327)
          Clark Hill PLC
          500 Woodward Avenue, Suite 3500
          Detroit, Michigan 48226
          (313) 965-8300
          KFornell@ClarkHill.com

          William D. Cramer (TX 00790527)
          Clark Hill PLC
          901 Main Street, Suite 6000
          Dallas, Texas 75203
          (214) 651-4300
          BCramer@ClarkHill.com

          Attorneys for ACSI / CFI