UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CFI GROUP USA LLC,

       Plaintiff,

v.                                                    Case No. 19-cv-12602
                                                      Hon. Gershwin A. Drain

VERINT AMERICAS INC., d/b/a
ForeSee Results and successor-in-
interest to ForeSee Results, Inc.,

       Defendant.

_____/

AMERICAN CUSTOMER SATISFACTION
INDEX, LLC,

       Plaintiff,                         Case No. 18-cv-13319
v.                                                    Hon. Gershwin A. Drain

FORESEE RESULTS, INC.,

       Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [#69, #70] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#80]

### I.    INTRODUCTION

On September 5, 2019, CFI Group USA LLC (CFI) filed the instant action

against Verint Americas Inc. (Verint) alleging claims for unfair competition under

15 U.S.C. § 1125, tortious interference with business expectancy, and unfair

competition under Michigan common law.  On October 27, 2020, the Court

consolidated this case with *American Customer Satisfaction Index LLC v. ForeSee*

*Results Inc.*, case number 2:18-cv-13319, for purposes of discovery.

Now before the Court is CFI's Motion for Partial Summary Judgment, filed

on June 3, 2021.  Also, before the Court is Verint's Motion for Summary Judgment

filed on June 10, 2021.  These matters are fully briefed and upon review of the

parties' filings, the Court concludes oral argument will not aid in the resolution of

these matters.  Accordingly, the Court will resolve the present motions on the

briefs.  *See* E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court grants

CFI's Motion for Partial Summary Judgment and denies Defendant Verint's

Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

The American Customer Satisfaction Index is a publicly available

compilation of customer satisfaction scores called "ACSI scores," measured on a

scale of 1 to 100.  The Index was created at and initially produced by the

University of Michigan under the direction of Dr. Claes Fornell.  ACSI scores are

calculated by running survey results through a structural equation model ("SEM")

that applies a Partial Least Squares ("PLS") statistical algorithm that Dr. Fornell

uniquely developed.  ACSI methodology cannot be practiced without Dr. Fornell's

algorithm.

In 1997, the University obtained two U.S. Trademark Registrations related to the Index:  (1)  Registration No. 2122772 for the word mark "ACSI"; and (2) Registration No. 2122752 for the mark "ACSI" and design ("ACSI Trademarks").

Dr. Fornell and his colleagues began using ACSI methodology commercially, first as Anjoy Research Inc., later as CFI Group Inc., and then as CFI.  In 1999, the Index was selected by numerous government agencies as the standard metric for measuring citizen satisfaction.

In 2001, Dr. Fornell formed ForeSee to apply ACSI methodology to the digital environment, including websites.  In April of 2002, the University granted ForeSee a ten-year license to use the ACSI marks.  In November of 2007, the University granted CFI a ten-year license to use the ASCI Trademarks.

In 2008, ACSI LLC was created, and the Index was spun off from the University.  The University granted ACSI LLC a license to use the ACSI Trademarks and the right to grant sublicenses.  All existing licenses, including ForeSee's and CFI's licenses, were assigned to ACSI, LLC.  ForeSee acknowledged the assignment.

By 2010, CFI and ForeSee were direct competitors for public sector contracts.  On April 4, 2012, "to allow continued use of the [ACSI Trademarks] by [ForeSee]," ACSI LLC and ForeSee entered into a license.  CFI also obtained a 10-year license from ACSI LLC in 2014.

Sometime in 2011, ForeSee developed a unique PLS algorithm that uses a Generalized Structural Component Analysis ("GSCA").  ForeSee applied for a patent relating to its GSCA algorithm but has abandoned its application.

On August 8, 2013, ForeSee voluntarily terminated its license, effective December 8, 2013.  Despite terminating the license, ForeSee has continued to represent to customers that its services include ACSI metrics even though it now utilizes the GSCA in connection with its services and no longer has a license to use the ACSI Trademarks.  For example in 2014, ForeSee's Public Sector Sales Manager, Brenden Curley, represented to multiple government agencies that ForeSee used and owned the ACSI methodology.  ECF No. 69, PageID.4195.   Mr. Curley sent follow-up emails to certain agencies such as the NIH/DHHS, representing that ACSI LLC's methodology was ForeSee's "key differentiator" that no other company offered.  *Id*., PageID.4213.

Similarly, a year subsequent to terminating its license agreement, ForeSee submitted a bid to the VA that represented, "[t]he statistical mathematical engine weighted algorithms widely known as the 'ACSI methodology' has been consistently used by, and continues to be used by, ForeSee since 2001."  *Id*., PageID.4291.

Additionally, ForeSee obtained government contracts through at least 2018 based on GSA Schedule, GS-10F-0044W, which states that "[s]ince 1999, the gold

4

standard of customer satisfaction for the Federal Government has been the American Customer Satisfaction Index (ACSI)." *Id.*, PageID.4470. The Schedule listed "ForeSee's proprietary ACSI survey tools" "maintaining the integrity of the ACSI methodology," and "American Customer Satisfaction Index (ASCI) web or mobile measurement." *Id.* However, during this timeframe, there is no dispute that ForeSee was not authorized to use the ACSI methodology or ACSI Trademarks in connection with its services because it terminated its license to use the ACSI Trademarks.

For example, ForeSee was awarded a contract with FNS in September of 2014, wherein ForeSee guaranteed measurement "through our proprietary methodology (ACSI)." *Id.*, PageID.4210. Similarly, in 2018, ForeSee agreed to perform under a contract requiring, inter alia, "ACSI Model Question Responses" and processing "through the ACSI model." *Id.*, PageID.4379.

In 2017, ForeSee submitted its bid for another five-year blanket purchase agreement (BPA) with the Federal Consulting Group (FCG). *Id.* ForeSee was awarded the five-year contract in 2012 because of ForeSee's use of the ACSI methodology as the "core" of ForeSee's solution and "one of our key competitive advantages." *Id.* Both ForeSee and CFI submitted bids for the 2012 BPA, valued at $35,000,000.00, and it was awarded to ForeSee. When ForeSee submitted its bid in 2017, however, it claimed that its methodology was: (1) "empirically proven

to be predictive of organizational desired outcomes"; (2) "[r]ooted in academia at the University of Michigan"; (3) "recognized as the Gold Standard in Federal Government"; (4) "historically labeled and referred in federal government as, 'ACSI Methodology'"; and (5) leverages the "patented methodology used by government for years."  ForeSee beat CFI for this BPA, valued at over $40,000,000.00.  ForeSee and CFI received the same ratings for the bid, as such, "[p]rice became the determining factor for the award."  *Id.*

ForeSee was sold to Answers in December of 2013.  Verint purchased Answers in 2018 and the company continues to do business as ForeSee.

## III.    LAW & ANALYSIS

### A.  Plaintiff's Motion for Partial Summary Judgment

### 1.  Standard of Review

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact

to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### 2.  Unfair Competition Claims

In order to avoid summary judgment in a Lanham Act case alleging violation of § 43 (15 U.S.C. §  1125), "the non-moving party must establish that genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement." *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 622-23 (6th Cir. 1996).

In other words, Verint must raise a genuine issue of material fact as to (1) whether its use of the ACSI Trademarks was without the registered owner's consent, and 2) whether this unauthorized use was likely to cause confusion in the marketplace as to the origin or sponsorship of the product.  *U.S. Structures,* 130 F.3d at 1188.  "Likewise, the standard of proof needed to prevail on a Michigan common law action for unfair competition is a showing of "'likelihood of confusion'"  *Big Boy Restaurants v. Cadillac Coffee Co.*, 238 F. Supp.2d 866, 875 (E.D. Mich. 2002).

Likelihood of confusion is generally determined by balancing the *Frisch* factors, which include: (1) strength of the mark, (2)  relatedness of goods or services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels, (6) likely degree of purchaser care, (7)  intent of the defendant in selecting the mark, and (8) likelihood of expansion of product line.  *See Frisch's Rests. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 647 (6th Cir. 1982).

Here, Verint lacks authority to use the ACSI Trademarks because ForeSee terminated the license agreement in December of 2013.  "Once a [] licensee contract is terminated, there is no doubt that the former [] licensee has no authorization or consent to continue use of the mark."  4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:31 (5th ed.).  Yet, Defendant has represented to numerous government agencies that it uses and owns the ACSI methodology.  It claims that it never changed its algorithm from the ACSI methodology, even though the record shows ForeSee began using a different methodology that it attempted to patent as early as 2011.  ForeSee falsely represented after the license's termination that it had been using a "multi-patented methodology . . .  for decades."

ForeSee's statements were deceptive and caused a likelihood of confusion. There is no material factual dispute that ForeSee falsely claimed to use and own the ACSI methodology years after its license to do so had been terminated.  In

2014, Brenden Curley, the Public Sector Sales Manager at ForeSee, represented to multiple government agencies that ForeSee used and owned ACSI methodology. Similarly, ForeSee submitted a bid to the VA in 2014 representing that "[t]he statistical mathematical engine and weighed algorithms widely known as the ACSI methodology has been consistently used by, and continues to be used by, ForeSee since 2001."  However, ForeSee admits that it stopped using the ACSI methodology and began using its GSCA algorithm sometime in 2011.

"Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999) ("in cases of literally false statements, evidence of actual deception is not required.") *Id*. at 617.  (citations omitted).   ForeSee's false statements are deceptive as a matter of law.  *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 262 (2d Cir. 2014) ("In a false advertising case [] where the parties are direct competitors in a two-player market, and where literal falsity and willful, deliberate deception have been proved, the presumptions of injury and consumer confusion may be used [].").  Moreover, "proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'"

*U.S. Structures, Inc. v. Eisner & Mendelson Co.*, 130 F.3d 1185, 1190 (6th Cir. 1997).

There is no material question of fact that ForeSee's misrepresentations were material because it could not obtain Government contracts without being able to provide "ACSI deliverables."   The Government's bids required "Average ACSI Model Question Responses," "ACSI Model Question Distributions," "processed through the ACSI model" and "[t]he cost for the ACSI survey measurement of customer satisfaction is $37,300.00."   Yet, only Plaintiff can rightfully claim to provide ACSI solutions.

As to likelihood of confusion under the *Frisch* factors, the ACSI Trademarks have been registered on the principal register of the United States Patent and Trademark Office for well over five years so they are "considered strong and worthy of full protection."  *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991).   Defendant argues the ACSI Trademarks are generic, however, if a trademark has been registered, there is a presumption that the term is not generic, and a defendant must overcome the presumption.  *Bath & Body Works Inc. v. Luzier Peronalized Cosms. Inc.*, 76 F.3d 743, 748 (6th Cir. 1996). Defendant has not overcome this presumption when the evidence of record is that Dr. Fornell developed a brand new customer satisfaction index employing a latent variable cause and effect model.   ForeSee points to the Law Dictionary which

defines ACSI as "a new way to evaluate satisfaction in American households,"
without supporting legal authority that a term in a dictionary merits a conclusion
that a term is generic as a matter of law.  ForeSee cites to *Distibution Servs., Inc. v.
United Parcel Serv., Inc.*, 856 F.3d 416, 429 (6th Cir. 2017), arguing reliance
solely on incontestable status of a mark is insufficient to demonstrate a mark's
strength.  However, the *Distribution Servs.* court held an incontestable mark's
"presumption of strength" can be rebutted with "evidence of extensive third party
use of similar marks."  *Id*.  The record is devoid of any such evidence.  ForeSee
presents a survey that excludes government employees and reveals a quarter of
respondents knew the ACSI brand.  This factor favors a likelihood of confusion.

Where the parties compete directly, "confusion is likely if the marks are
sufficiently similar."  *Progressive Distrib. Servs*.,  856 F.3d at 431.  The Sixth
Circuit has explained the relatedness "inquiry focuses on whether goods or services
that are similarly marketed and appeal to common customers are likely to lead
consumers to believe they come from the same source or are somehow connected
with or sponsored by a common company."  *Id*. (internal quotation marks and
citations omitted).

Here, ForeSee confusingly argues that while the parties' services are related,
the confusion is the fault of Dr. Fornell and "consumers prior knowledge of
ForeSee as applying ACSI model/methodology."  ECF No. 128, PageID.16182.

ForeSee concedes the parties compete with the same entities to provide customer satisfaction and product quality measurement services.  This factor favors a likelihood of confusion.  *Days Inn Worldwiide, Inc. v. Adrian Motel Co., LLC*, No. 07-13523, 2009 U.S. Dist. LEXIS 90393, *28 (E.D. Mich. Sep. 30, 2009) (recognizing that relatedness of services is "significant because the Corporate . . . Defendants offered the same services as other, legitimate Plaintiff franchisees.").

"Similarity of marks is a factor of considerable weight." *Progressive Distrib. Servs*., 856 F.3d at 432.  Here, the marks were not just similar, they were identical because ForeSee continued to use the ACSI Trademarks. "[P]roof of actual confusion is not required when there is strong evidence of actual copying of a plaintiff's trademark." *Days Inn Worldwide*, 2009 US. Dist. LEXIS, at *29.  "In such instances, a likelihood of confusion is presumed because no matter what degree of care is exercised, consumers are unlikely to be able to determine that Plaintiff was not the sponsor . . . ." *Id.*  This factor shows a likelihood of confusion because ForeSee used the actual ACSI Trademarks.

While evidence of actual confusion is not a prerequisite to show likelihood of confusion, "[n]othing shows the likelihood of confusion more than the fact of actual confusion." *Progressive Distrib. Servs*., 856 F.3d at 433.  "Isolated instances of confusion are insufficient to support a finding of likely confusion." *Id*. Here, the evidence of record shows that several government agencies believed they

were receiving ACSI scores and data when they asked ForeSee for "Breakdowns in ACSI." The record is replete with numerous government contract documents that required ACSI deliverables from ForeSee after the termination of the parties' license agreement. Defendant mischaracterizes the plethora of contracts, emails and publications where ForeSee falsely represented it used ACSI methodology and had done so for decades. ForeSee's suggestion that these were merely a handful of isolated instances is merely attorney argument without evidentiary support. This factor increases the likelihood of confusion.

As to the marketing channels used, this factor requires the Court to consider "how and to whom the respective goods or services of the parties are sold." *Progressive Distrib. Servs*., 856 F.3d at 434. If the goods are sold through different channels, there is less likelihood of confusion. *Id*. If the parties have different customers and market their goods or services differently, the likelihood of confuses decreases. *Id.* This factor also increases the likelihood of confusion as the parties use the same marketing channels to sell their services.

As to the degree of purchaser care, a higher degree of care correlates with a decrease in the likelihood of confusion. *Progressive Distrib. Servs*., 856 F.3d at 434. There is a high degree of purchaser care with respect to the parties' services, thus this factor decreases the likelihood of confusion.

As to the Defendant's intent, the evidence shows Defendant chose to capitalize on the ACSI Trademarks but did not want to pay for a license to do so. Given the requirements of numerous government agencies that their contracts include the use of ACSI methods and metrics, ForeSee knew it could only secure these contracts if it claimed affiliation with ACSI. This factor favors a likelihood of confusion.

Neither party discusses the likelihood of expansion of the product lines, thus this factor does not appear to increase the likelihood of confusion.

Upon balancing the *Frisch* factors, ForeSee's continued use of the ACSI Trademarks subsequent to termination of the parties' license agreement is likely to cause confusion with respect to the origin and sponsorship of ForeSee's products.

In response to Plaintiff's present motion, ForeSee confusingly asserts that its GSCA methodology evolved from the ACSI methodology, and "[f]rom a marketing perspective ForeSee considered [its] particular application of ACSI model/methodology to be 'ForeSee methodology,' but it was in fact a continued application of ACSI model/methodology." In support of this contention, ForeSee cites to an irrelevant docket number and Mr. Larry Freed's declaration that ForeSee created a new methodology because "there was value in [it] having its own unique intellectual property in case there was ever any interest in the acquiring of [it] or in taking the company public."

However, nowhere in the record does ForeSee inform any Government agencies that it used "ForeSee" methodology, rather it falsely claimed to these agencies that it utilized the ACSI model. Finally, ForeSee suggests that Dr. Fornell knew that ForeSee had changed its methodology and he allowed ForeSee to refer to its new methodology as "ACSI methodology." Yet, none of the evidence ForeSee relies upon shows anyone informed Dr. Fornell about the change. At best, Mr. Freed states that he communicated to the board, of which Dr. Fornell was a member, about ForeSee's "interest to enhance" the existing technology. Dr. Fornell denies he was ever informed about the change. Defendant cannot rely on board materials which do not mention GSCA or a change to the algorithm to show Dr. Fornell's knowledge.

Defendant also cannot lay the blame on government agencies' purported carelessness. ForeSee was aware it was contractually obligated to provide "ACSI" services. In fact, it was ForeSee's direct marketing efforts that caused confusion among the agencies. Accordingly, for the reasons articulated above, Plaintiff is entitled to judgment in its favor on its unfair competition claims.

## 2. Verint's Affirmative Defenses (Estoppel, Laches, Acquiescence, Waiver and Fair Use)

Plaintiff also argues it is entitled to summary judgment on Verint's affirmative defenses of estoppel (Fourth), laches (Fifth), acquiescence (Sixth), waiver (Seventh), fair use (Ninth), authorized use (Tenth and Eleventh), and

generic/descriptive (Thirteenth).  District courts "can and do resolve affirmative defenses at the summary judgment stage."  *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 337 (6th Cir. 2017).  The summary judgment standard of review remains the same.  *Id.*

The fair use doctrine prohibits a trademark holder from precluding others from using the "word that forms the trademark in its primary or descriptive sense." *ETW Corp. v. Jireh Pub. Inc*., 332 F.3d 915, 920 (6th Cir. 2003).  The doctrine permits others to "use a protected mark to describe aspects of their own goods." *Id*.  However, Defendant may only rely on this defense if its use of the marks was "descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin."  15 U.S.C. § 1115(b)(4).

The Court agrees that Defendant cannot raise these defenses because there is no material factual dispute that ForeSee acted in bad faith and it is not entitled to fair use defenses.  *Marketquest Grp., Inc. v. BIC Corp*., 862 F.3d 927, 937 (9th Cir. 2017 ("good faith is an element of the defense, not merely a factor to consider when it is relevant in a given case.").

The focus of a fair use defense is whether ForeSee "intended to capitalize on plaintiff's good will."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulus Inc*., 228 F.3d 56, 66 (2d Cir. 2000).  The record here reveals that

ForeSee continued to use the ACSI Trademarks in order to secure contracts with government agencies which required ACSI methodology and metrics.

Additionally, there is no material question of fact that ForeSee's equitable defenses are precluded by its unclean hands. Laches is the "negligent and unintentional failure to protect one's rights." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc*., 270 F.3d 298, 320 (6th Cir. 2001). The defense of laches is not available to ForeSee. An infringer claiming laches "must be able to demonstrate the absence of any intent to confuse and deceive the public; there must be a lack of evidence showing a scheme to 'foist upon the public the (products) of the defendant as those of' the plaintiff. *Cuban Cigar Brands NV v. Upmann Intern., Inc*., 457 F. Supp. 1090 (S.D.N.Y. 1978) (citation omitted).

It is well settled that a "former licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased." *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co*., 514 F.2d 665, 670 (5th Cir. 1975). Acquiescence requires active consent, and estoppel requires "misrepresentations, affirmative acts of misconduct, or intentionally misleading silence by the plaintiff." *WM Mfg. Co. v. Dura Corp*., 592 F.2d 346, 350 (6th Cir. 1979); *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc*., 934 F.2d 1551, 1556 (11th Cir. 1991). In order to establish the defense of equitable estoppel in an infringement action, a defendant must prove the following (1) the plaintiff engaged

in misleading conduct that lead the defendant to believe the plaintiff would not bring an infringement action, (2) reliance on the misleading conduct by the defendant, (3) material prejudice suffered by the defendant as a result of the defendant's reliance. *See Scholle Corp v. Blackhawk Molding Co., Inc*., 133 F.3d 1469, 1471 (Fed. Cir. 1988). ForeSee has not shown any such conduct by Plaintiff.

In this case, ForeSee continued to use the ACSI Trademarks and represented it used the ACSI Index even though it knew its GSCA did not use the same algorithm. Because ForeSee's infringement was willful, Plaintiff is entitled to judgment in its favor on Verint's Fourth (estoppel), Fifth (laches), Sixth (acquiescence), Seventh (waiver), Ninth (fair use), Tenth and Eleventh (authorized use) affirmative defenses.

Finally, Verint alleges various affirmative defenses related to the validity of the ACSI marks. The ACSI marks are incontestable under 15 U.S.C. § 1115(b). Plaintiff is likewise entitled to summary judgment on Verint's Thirteenth Affirmative defense (generic/descriptive).

### 3. Verint's False Advertising Counterclaim

To prove a claim for false advertising under the Lanham Act, Verint must establish that: (1) CFI has made false or misleading statements of fact concerning its product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely

influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5)  there is some causal link between the challenged statements and harm to the plaintiff.  *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc*., 270 F.3d 298, 323 (6th Cir. 2001).

Verint's False Advertising Counterclaim identifies two alleged misrepresentations by CFI. First, that "The American Customer Satisfaction Index (ACSI) is the nation's only uniform, cross-industry measure of customer satisfaction."  Second, that the Index is "the most accurate and researched index of customer satisfaction available."

Verint has come forward with no evidence that these statements are false or misleading.  Nor has Verint come forward with any evidence of actual or likely deception or a causal link between these statements and harm to Verint.  As such, Plaintiff is entitled to summary judgment on Verint's false advertising claim.

### B.  Defendant's Motion for Summary Judgment

Verint moves for summary judgment on all of ACSI's claims in the First Amended Complaint raising various defenses, none of which have merit. Accordingly, the Court will deny Verint's Motion for Summary Judgment.

First, Verint argues it is entitled to summary judgment because of non-party CFI Software's execution of a General Release in a Joinder and Waiver Agreement.  This argument is without merit.  Verint's defense concerns the fact

that when Dr. Fornell sold ForeSee to Answers, Dr. Fornell provided a General Release of all claims relating to ForeSee and represented that as of the date of sale, December of 2013, ForeSee did not infringe or misappropriate any intellectual property rights of any person or engage in unfair competition or trade practices.

As an initial matter, Defendant failed to plead the affirmative defense of release, and therefore, it has been waived.  Fed. R. Civ. P. 8(c); *Jack Mann Chevrolet Co. v. Assocs. Inv. Co*., 125 F.2d 778, 784 (6th Cir. 1942); *Parker v. City of Detroit*, No. 16-CV-13036, 2018 WL 4206968, at *3 (E.D. Mich. Sep. 4, 2018). To avoid application of Rule 8(c), Verint characterizes its defense as "waiver." Yet, the doctrine of release is the premise of Defendant's argument, and not waiver.

Releases are strictly construed and releases that purport to release future conduct are generally void.  *See Hallman v. Dover Downs, Inc.* No. CIV.A. 85-618 CMW, 1986 WL 535, at *4 (D. Del. Dec. 31, 1986); *see also* 29 Williston on Contracts § 73:9 (4th ed.) ("A general release releases all present, but not future, claims."); *Hines v. G. Reynolds Sims & Assocs., P.C*., No. CIV.A. 12-12478, 2013 WL 1774938, at *3 (E.D. Mich. Apr. 25, 2013) ("Michigan courts have enforced the tenet of hornbook law, refusing to interpret releases to cover future claims arising from future conduct where the release does not explicitly reference such

scope.").  As such, Verint's argument that non-party CFI Software released any

and all claims arising from ForeSee's future conduct is without merit.

Even if releases of future claims were enforceable, the General Release does

not cover future claims; it applies only to claims that existed at the time of the

execution.  "When interpreting a contract, the role of a court is to effectuate the

parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739

(Del. 2006).  A court "must rely on a reading of all of the pertinent provisions of

the [contract] as a whole, and not on any single passage in isolation. *O'Brien v.*

*Progressive N. Ins*. Co., 785 A.2d 281, 287 (Del. 2001) (footnote omitted).

Under Section 4, the release was "[e]ffective for all purposes as of the

Effective Time," December 20, 2013.  ECF No. 106, PageID.10700.  Verint's

argument is misplaced since Plaintiff's claims arise out of ForeSee's post-closing

conduct.  In other words, Plaintiff's claims are based on conduct occurring after the

"date hereof" on December 20, 2013, therefore the release is inapplicable to these

claims.  The release clarifies that it applied to claims "that do now exist, may exist

or heretofore have existed with respect to the subject matter of this release." *Id.*

Moreover, neither ACSI LLC nor CFI are parties to the General Release.

ForeSee argues that Plaintiff is an affiliate of CFI Software.  ForeSee bases this

argument on the fact that Dr. Fornell had some overlapping ownership in CFI

Software.  However, Defendant acknowledges that Dr. Fornell owned roughly 72%

of CFI Software and CFI Software only owned 37.82% of ForeSee.  The Release

Agreement provides that "nothing in this Agreement, express or implied, is

intended to confer on any Person other than the parties hereto or their respective

successors and assigns any rights, remedies, obligations or liabilities pursuant to or

by reason of this Agreement." *Id*.   Because Plaintiff did not waive or release its

claims, Verint is not entitled to summary judgment on this basis.

Additionally, Verint argues it is entitled to summary judgment based on the

doctrines of laches, estoppel, fair use and acquiescence.  However, the Court has

already concluded that Plaintiff is entitled to judgment in its favor on these

affirmative defenses based on Defendant's unclean hands.  *See Days Inn*

*Worldwide, Inc. v. Adrian Motel Co., LLC*, No. 07-13523, 2009 WL 3199882, at

*12 (E.D. Mich. Sep. 30, 2009) (precluding laches, acquiescence, and/or equitable

estoppel).  The record before the Court shows Defendant voluntarily terminated its

license to use the ACSI Trademarks in 2013 and had meetings with employees to

discuss phasing out use of the ACSI Trademarks.  Yet, Verint continued to use the

ACSI Trademarks and represent that it utilized the ACSI methodology in

connection with its services in order to secure business with several government

agencies, including the USPTO and the FCG.

Similarly, Verint has not overcome the presumption of validity with respect

to the ACSI marks.  *See Bath & Body Works Inc. v. Luzier Personalized Cosms.*

*Inc.*, 76 F.3d 743, 748 (6th Cir. 1996).   Verint argues "American Customer

Satisfaction Index" is generic, similar to "chocolate fudge" soda and "honey

brown" ale.  However, there is no evidence in the record to support this assertion.

Rather, the record is that the ACSI Index was a "new customer satisfaction index

for the U.S. that employed a latent variable cause-and-effect model."  Moreover,

Defendant's conduct suggests the ACSI Trademarks are not generic because it paid

a license fee to use them and had meetings with staff after the license's termination

to discuss phasing out the ACSI verbiage from marketing materials and pitches.

For all of these reasons, Defendant is not entitled to judgment in its favor on

any of Plaintiff's claims.

## IV.   CONCLUSION

For the reasons articulated above, Plaintiff's Motion for Partial Summary

Judgment [#69, #70] is GRANTED.  Plaintiff is entitled to judgment in its favor on

its unfair competition claims (Counts I and III), on Verint's Fourth, Fifth, Sixth,

Seventh, Ninth, Tenth, Eleventh, and Thirteenth Affirmative Defenses, as well as

on Verint's False Advertising Counterclaim.

Defendant's Motion for Summary Judgment [#80] is DENIED.

IT IS SO ORDERED.


Dated:  February 14, 2022                    /s/ Gershwin A. Drain
                                             GERSHWIN A. DRAIN
                                             U.S. DISTRICT JUDGE



CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 14, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager